

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| VANDOLA CHAMBERS, *et al.* (See List of Plaintiffs below) | § § § | |
| *Plaintiffs,* | § § | Civil Action No. 506CV 194 |
| vs. | § § | Jury Requested |
| ELI LILLY AND COMPANY | § § § | |
| *Defendant.* | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

COME NOW Plaintiffs, (see List of Plaintiffs below), hereinafter collectively referred to as "Plaintiffs", complaining of ELI LILLY AND COMPANY, and for cause of action would respectfully show unto the Court and the Jury the following:

### I.   INTRODUCTION

1.    This is a civil action brought on behalf of Plaintiffs regarding damages which occurred as a result of Plaintiffs' ingestion of the prescription drug, Zyprexa, also known as Olanzapine (hereinafter referred to as "Zyprexa"). Zyprexa was manufactured, marketed, distributed and sold to Plaintiffs by Defendant and/or its representatives.

### II.   PARTIES

#### A.   PLAINTIFFS

2.    Plaintiffs are individuals, who currently reside in various U.S. States, as indicated below:

# LIST OF PLAINTIFFS (1-270)

| | Last Name | First Name | State of Residence |
|---|---|---|---|
| 1 | Adams | Linda | OH |
| 2 | Aleman | John | IL |
| 3 | Allen | Pamela | IA |
| 4 | Arnold | Donald | OH |
| 5 | Ash | Earnest | OH |
| 6 | Ashmore | Charlane | CA |
| 7 | Barby | Joseph | MI |
| 8 | Baxter | Nicholas | AR |
| 9 | Beeks | Shirley | MS |
| 10 | Berg | Linda | MN |
| 11 | Blackburn | Sharon | NC |
| 12 | Boulware | Janet | SC |
| 13 | Burks | Linda | MS |
| 14 | Chambers | Vandola | WI |
| 15 | Chapman | Henry | MS |
| 16 | Choice | Stephanie | TX |
| 17 | Chrisawn | Paul | NC |
| 18 | Ciezki, Individually and as the Proposed Administrator of the Estate of Michael Ciezki, Deceased | Kathlene | WI |
| 19 | Clarady | Deborah | MS |
| 20 | Cleveland | Hayward | AR |
| 21 | Cochran | Terry | IN |
| 22 | Cole | Jerry | NC |
| 23 | Collins | Dianne | NC |
| 24 | Collins | Melody | WV |
| 25 | Combs | Nichetta | KS |
| 26 | Connor | Roosevelt | WI |
| 27 | Cooper | Edna | MI |
| 28 | Copeland | Artemesia | KS |
| 29 | Costas | Lourdes | SC |
| 30 | Courtney | Dan | IA |
| 31 | Cox | Debra | MO |
| 32 | Cox | Janis | AZ |
| 33 | Criswell | Vivian | ME |
| 34 | Cupps | Stuart | OH |
| 35 | Currins | Leigh | IL |
| 36 | Cushing | Gail | MI |

| 37 | Cutler | Jeffrey | ND |
|----|--------|---------|-----|
| 38 | Dallier | Dennis | NC |
| 39 | Daniel | Philipe | OH |
| 40 | Davis | Juana | AR |
| 41 | Davis | Justina | OH |
| 42 | Davis | Lee | AR |
| 43 | Davis | Richard | SC |
| 44 | de Dios | Minerva | CA |
| 45 | Deas-Anderson | Rose | SC |
| 46 | Delane | Linzell | TX |
| 47 | Depew | Terry | OH |
| 48 | Derks | Tremelda | CA |
| 49 | Dexter | Catherine | ME |
| 50 | Dillon | Michael | SD |
| 51 | Dockery | Sherry | KY |
| 52 | Dooling | Charles | WV |
| 53 | Douglas | Carmen | SC |
| 54 | Driggers | Bernie | NC |
| 55 | Dustin | Mark | MI |
| 56 | Eanes | Barbara | MS |
| 57 | Easley | Robert | OH |
| 58 | Eitel | Robert | OK |
| 59 | Ellis | Eva | WI |
| 60 | Emmons | Jean | CA |
| 61 | Entrekin | Sandra | MS |
| 62 | Ervin | Eloise | NC |
| 63 | Ferry | Scott | MN |
| 64 | Fisher | Timothy | PA |
| 65 | Fix | Tammie | MI |
| 66 | Flavin | Patricia | MS |
| 67 | Flowers | Bryan | CO |
| 68 | Ford | Margarette | VA |
| 69 | Fowler | Andre | OH |
| 70 | Fowler | Sharon | PA |
| 71 | Frazier | Albertina | OH |
| 72 | Freeman | Mary | MS |
| 73 | Freeman | Wanda | SC |
| 74 | Gallegos | Nora | TX |
| 75 | Gentry | Catherine | SC |
| 76 | Gibbs | Jerome | MS |
| 77 | Gilbo | Tor | OH |

| 78 | Glassford | Betty | WI |
| 79 | Gorham | Thomas | CA |
| 80 | Gosselin | Bruce | MA |
| 81 | Grace | Amelia | PA |
| 82 | Granger | Debra | MA |
| 83 | Gray | Carolyn | PA |
| 84 | Gray | Veronica | OH |
| 85 | Green | Juanita | MS |
| 86 | Green | Valerie | IL |
| 87 | Gregory | Herman | SC |
| 88 | Greve | David | WA |
| 89 | Grisez | Rolanda | OH |
| 90 | Groves | Lynne | WA |
| 91 | Gustafson | Molly | CA |
| 92 | Gutierrez | Rogelio | AK |
| 93 | Haas | Jennifer | NE |
| 94 | Hackney | Lori | OH |
| 95 | Hall | Peggy | OK |
| 96 | Hall | Susan | OH |
| 97 | Halpin | Mark | TX |
| 98 | Hamilton-Stafford | Linda | KS |
| 99 | Harriman | Michael | ME |
| 100 | Harris | Lynda | TX |
| 101 | Harris | Mary | MS |
| 102 | Harris | Ozetta | OH |
| 103 | Hart | Terry | MA |
| 104 | Hawkins | Oteka | NM |
| 105 | Hayes | Bobbie | MS |
| 106 | Heard | Alandia | PA |
| 107 | Heard | Charles | MI |
| 108 | Hearn | Dora | MS |
| 109 | Hilton | Nicole | OH |
| 110 | Hinton | Sam | MS |
| 111 | Hodges | Craig | MI |
| 112 | Hohenberger | Karen | OK |
| 113 | Holliman | Carl | MO |
| 114 | Hollingsworth | Betty | SC |
| 115 | Homan | Larry | OH |
| 116 | Horn | Betty | IA |
| 117 | Horton | Barbara | MS |
| 118 | Host | Herbert | MI |

| 119 | Howard | Laura | OH |
|-----|--------|-------|-----|
| 120 | Howell | Ramon | OH |
| 121 | Huffin | Eva | NC |
| 122 | Hundley | Renee | PA |
| 123 | Immormino | Rickey | MI |
| 124 | Irwin | Joy | WV |
| 125 | Isom | Hattie | WI |
| 126 | Jackson | Christina | OH |
| 127 | Jackson | Faun | MO |
| 128 | Jackson | Jaqueline | OH |
| 129 | Jackson | Lottie | MO |
| 130 | Johnson | Betty | MS |
| 131 | Johnson | Eric | MS |
| 132 | Jones | Jackie | MS |
| 133 | Jones | Lisa | MN |
| 134 | Jones | Ronald | LA |
| 135 | Jordan | Randy | MS |
| 136 | Jurgens | Susan | CA |
| 137 | Keith | Cindy | OH |
| 138 | Kimrey | Gregory | MO |
| 139 | Komeau, on Behalf of Frankerson Komeau, an Incapacitated Adult | Anna Marie | MA |
| 140 | Krepley | Scott | PA |
| 141 | Larkins | Keith | OH |
| 142 | Latta | Terri | PA |
| 143 | Lawshea | Donnell | OH |
| 144 | Ledford | Era | NC |
| 145 | Lee | Thomas | OK |
| 146 | Lee, on Behalf of Sherri Wright, and Incapacitated Adult | Elizabeth | OH |
| 147 | Leigh | Richard | OH |
| 148 | Lester | Jennifer | WV |
| 149 | Lewis | Lorraine | NC |
| 150 | Lindsey | Brenda | FL |
| 151 | Little | Eric | NC |
| 152 | Lucas | Joann | MO |
| 153 | Lucas, Individually and as the Proposed Administrator of the Estate of Michael Lucas, Deceased | Felecia | OH |
| 154 | Luke | Ellis | TX |
| 155 | Luther | Peggy | MS |
| 156 | Lyles | Judy | MS |

| 157 | Mann | Victoria | MI |
|-----|------|----------|-----|
| 158 | Manseill | Bobby | MS |
| 159 | Martinez | Jarrod | TX |
| 160 | Martinez | Karen | WI |
| 161 | Martinez | Maria | TX |
| 162 | Mason | Anthony | MI |
| 163 | McClamb | Christilyn | OH |
| 164 | McCord | Leslie | MI |
| 165 | McCord | Wanda | OH |
| 166 | McCracken | Margery | WA |
| 167 | McCray | Teddy | MI |
| 168 | McCullough | Sharon | MI |
| 169 | McDonald | Kathleen | MA |
| 170 | McDowell | Venus | SC |
| 171 | McKersher | Sue | MI |
| 172 | McKinney | Cheryl | IL |
| 173 | McLendon | Regina | MI |
| 174 | McSwain | Georgia | MS |
| 175 | Meadows | Patricia | PA |
| 176 | Melton | Gerald | AZ |
| 177 | Mills | Donna | AR |
| 178 | Minnish | Kyong | OH |
| 179 | Mitchell | Fredrick | IL |
| 180 | Mitchell | Kevin | MS |
| 181 | Montano | Baldomero | TX |
| 182 | Montoya | Karen | MI |
| 183 | Moore | Kent | MI |
| 184 | Moore | Marcel | CA |
| 185 | Moore | Margaret | OH |
| 186 | Morgan | Donna | MS |
| 187 | Morris | John | PA |
| 188 | Morris | Larry | WV |
| 189 | Murray | Agnes | SC |
| 190 | Myers | Don | SC |
| 191 | Myers | Teresa | OH |
| 192 | Myrick | Steven | OR |
| 193 | Needham | Arthur | MI |
| 194 | Nesmith | Dorothy | SC |
| 195 | Newland | Jerome | MI |
| 196 | Ortiz | Jack | MI |
| 197 | Palonis | Robert | MI |

| 198 | Paris | John | OH |
|---|---|---|---|
| 199 | Patteson | Janie | TX |
| 200 | Payne | James | MO |
| 201 | Pettis | Gloria | MS |
| 202 | Phillips | Cynthia | CA |
| 203 | Pierre | Leminda | MS |
| 204 | Pirttila | Gerald | WA |
| 205 | Placek | Audrey | MI |
| 206 | Price, on Behalf of Linda Costello, an Incapacitated Adult | Debra | OH |
| 207 | Quinn | Nora | MS |
| 208 | Rand | Debra | MI |
| 209 | Rankin | Naomi | WV |
| 210 | Ratclif | Martha | MS |
| 211 | Ratfield | Tammy | NE |
| 212 | Redfern | Kathleen | WA |
| 213 | Renner | Lorinda | MS |
| 214 | Riccobene | Joseph | OH |
| 215 | Rice | Sylvia | NY |
| 216 | Richardson | Valora | NY |
| 217 | Ritchie | Jerry | MI |
| 218 | Robbins | Rebecca | WA |
| 219 | Roberson | James | TX |
| 220 | Roberts | Melinda | SC |
| 221 | Robinson | John | MO |
| 222 | Sanders | Ann | MS |
| 223 | Savage | Andrea | MS |
| 224 | Scott | Emma | WI |
| 225 | Seabrum | Shirley | MS |
| 226 | Seal | Lovie | OH |
| 227 | Seaton | Carolyn | WI |
| 228 | Shields | Charlene | MS |
| 229 | Shrode | Marjorie | NY |
| 230 | Shugzda | Edward | AZ |
| 231 | Simpson | Phyllis | CA |
| 232 | Skinner | Anitonette | MS |
| 233 | Small | Johnny | TX |
| 234 | Smith | Helena | AL |
| 235 | Smith | Joyce | WI |
| 236 | Smith, Individually and as the Proposed Administrator of the Estate of Jacqueline Smith, Deceased | Alvin | WI |

| 237 | Staley | Haskey | OH |
|-----|--------|--------|-----|
| 238 | Stauffer | Angelita | AR |
| 239 | Steadham | Cathy | TX |
| 240 | Steadham, Individually and as the Proposed Administrator of the Estate of Minnie Perry, Deceased | Cathy | TX |
| 241 | Stone | Cynthia | MO |
| 242 | Stone | David | WI |
| 243 | Stratton | William | CA |
| 244 | Sykes | Jan | WV |
| 245 | Tardiff | Janeane | MI |
| 246 | Taylor | Tammy | WY |
| 247 | Teffeteller | Lisa | PA |
| 248 | Thibault | Christine | AR |
| 249 | Tollison | Jody | NC |
| 250 | Tucker | Ginger | CA |
| 251 | Tyson | Ben | AK |
| 252 | Vega | Brenda | CA |
| 253 | Washington | Iruth | MS |
| 254 | Waters | Samantha | OH |
| 255 | Watson | David | WV |
| 256 | Watson | Mark | ME |
| 257 | Wells | Eric | CT |
| 258 | Welton | Dale | WA |
| 259 | West | Elander | MS |
| 260 | Williams | Jannie | TN |
| 261 | Williams | Latrina | WI |
| 262 | Williams | Shelton | MI |
| 263 | Wilson | Anthony | MS |
| 264 | Wilson | Kerry | MO |
| 265 | Wonderling | Verna | PA |
| 266 | Wood | Doreen | GA |
| 267 | Woods, on Behalf of Otis Mizell, and Incapacitated Adult | Virginia | MS |
| 268 | Worsham | Charles | AR |
| 269 | Wright | Buddy | NC |
| 270 | Wright | Stephanie | CA |

## B.   DEFENDANT

3.    Defendant **ELI LILLY AND COMPANY**, "Lilly" is a company organized and

existing under the laws of the State of Indiana with its principal place of business in Indiana.  At

all material times herein, Defendant advertised, marketed, promoted, sold and/or distributed Zyprexa in the State of Texas, and more specifically in the Eastern District of Texas. Defendant may be served with process of this Court upon its registered agent for service of process in Texas, to wit: National Registered Agents, Inc., 1614 Sidney Baker Street, Kerrville, TX 78028.

### III.    JURISDICTION & VENUE

4.    The Court has jurisdiction over this lawsuit under 28 U.S.C. §1332(a)(1) because the Plaintiffs and the Defendant are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs.  This Federal Court sitting in diversity may exercise personal jurisdiction over Defendant under the Texas long-arm statute which is consistent with the United States Constitution.  Venue is proper in this Court under 28 U.S.C. §1391(c) in that the Defendant resides, transacts business, and has placed its products into the stream of commerce for sale in the Eastern District of Texas.  The Judicial Panel on Multidistrict Litigation has assigned MDL-1596; *In re Zyprexa Liability Litigation* to Sr. J. Jack B. Weinstein in the Eastern District of New York.

### IV.    FACTS

5.    At all times relevant herein, Defendant was in the business of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling and distributing pharmaceuticals, including Zyprexa, for use by the mainstream public, including Plaintiffs.

6.    Zyprexa is among a group of drugs known as "atypical antipsychotics" or "second generation antipsychotics," which was initially approved in September 1996 by the U.S. Food and Drug Administration (hereinafter the "FDA").

7.   The initial indication approved by the FDA was for treatment of adults with schizophrenia, a relatively rare condition that affects less than one percent of the population of the United States.

8.   In 2001, Defendant was able to get the FDA to approve Zyprexa for the short-term treatment of acute manic episodes associated with Bipolar I Disorder.

9.   Despite its limited approval, and relatively small indicated target population, in eight years after its launch Zyprexa had become the third-best selling drug in the world. Zyprexa's worldwide sales in 1997, its first full year on the market were $500 million. According to Defendant's Form 10K, 2004 worldwide Zyprexa sales exceeded $4.4 billion, which made Zyprexa Defendant's top selling drug by over $3.2 billion.

10.   Critical to this blockbuster success was Defendant's aggressive marketing of Zyprexa, which consisted chiefly of overstating the drug's uses (including massive off-label promotion) while understating and outright concealing its life-threatening side effects.

11.   Medical literature dating back as far as the 1950s, and Defendant's own pre-clinical studies regarding Zyprexa, demonstrated that Zyprexa had the potential to cause diabetes, diabetes-related injuries (e.g. severe weight gain, hyperglycemia, diabetic ketoacidosis), pancreatitis, cardiovascular complications, and other severe adverse effects.   Despite this knowledge, Defendant never attempted to provide an adequate warning label including these risks in either the original label, or in the 17 different label revisions since then, until it was finally forced to do so by the FDA.

12.   Almost immediately after Zyprexa's launch, there began to be large numbers of adverse event reports filed with the FDA's Medwatch database involving diabetes-related

illnesses associated with Zyprexa, all of which were reported to the FDA and known to Defendant.

13.   In 2002, nearly a year and a half before attempting to warn of the risk of diabetes in the United States, Defendant changed its labeling in the United Kingdom and Japan to include warnings regarding the association between Zyprexa and diabetes-related injuries.

14.   On September 11, 2003, the FDA informed all manufacturers of atypical antipsychotic drugs, including Defendant, that due to an increasing prevalence of diabetes-related illnesses associated with this class of drugs, that all labeling must bear the following language in the Warnings section:

> Hyperglycemia, in some cases extreme and associated with ketoacidosis or hyperosmolar coma or death, has been reported in patients treated with atypical antipsychotics. Assessment of the relationship between atypical antipsychotic use and glucose abnormalities is complicated by the possibility of an increased background risk of diabetes mellitus in patients with schizophrenia and the increasing incidence of diabetes mellitus in the general population. Given these confounders, the relationship between atypical antipsychotic use and hyperglycemia-related adverse events is not completely understood. However, epidemiologic studies suggest an increased risk of treatment emergent hyperglycemia-related adverse events in patients treated with atypical antipsychotics. Precise risk estimates for hyperglycemia-related adverse events in patients treated with atypical antipsychotics are not available.
>
> Patients with an established diagnosis of diabetes mellitus who are started on atypical antipsychotics should be monitored regularly for worsening of glucose control. Patients with risk factors for diabetes mellitus (e.g., obesity, family history of diabetes) who are starting treatment with atypical antipsychotics should undergo fasting blood glucose testing at the beginning of treatment and periodically during treatment. Any patient treated with atypical antipsychotics should be monitored for symptoms of hyperglycemia including polydipsia, polyuria, polyphagia, and weakness. Patients who develop symptoms of hyperglycemia during treatment with atypical antipsychotics should undergo fasting blood glucose testing. In some cases, hyperglycemia has

resolved when the atypical antipsychotic was discontinued; however, some patients required continuation of anti-diabetic treatment despite discontinuation of the suspect drug.

15.    Despite the FDA mandate, however, Defendant waited an additional six (6) months, until March 1, 2004 to send out a "Dear Doctor Letter" advising of the new warnings, which did not appear in the Physicians' Desk Reference until the 2005 edition.

16.    Rather than risk losing the massive revenue generated by the cash cow that Zyprexa had become, Defendant immediately employed its marketing and sales force to downplay the new warnings as a mere regulatory precaution and to get out the spin that it was actually the other atypical antipsychotics that were to blame for the whole class of drugs getting relabeled.

17.    The statements, representations and promotional schemes employed by Defendant were known by Defendant to be false, deceptive, incomplete, misleading and untrue. Nevertheless, Defendant had economic interests at heart when it proceeded with its schemes in conscious disregard for the health and safety of consumers such as Plaintiff.

18.    In March 2004, the U.S. Attorney for the Eastern District of Pennsylvania commenced an investigation in Defendant's marketing practices concerning Zyprexa.

19.    As a result of Defendant's callous disregard for human safety in the name of profits, Plaintiffs have suffered the injuries, damages, and losses complained of herein.

## V.   DISCOVERY RULE & FRAUDULENT CONCEALMENT

20.    The nature of Plaintiffs' injuries and their relationship to Zyprexa use were inherently undiscoverable; and, consequently, the discovery rule should be applied to toll the running of the statute of limitations until Plaintiffs knew or through the exercise of reasonable care and diligence should have known of the existence of their claims against Defendant. Plaintiffs did not discover, and through the exercise of reasonable care and due diligence, could not have discovered, their injuries earlier.

21.   Further, Plaintiffs did not have knowledge of facts that would lead a reasonable, prudent person to make inquiry to discover Defendant's tortious conduct.  Under appropriate application of the "discovery rule," Plaintiffs' suit was filed well within the applicable statutory limitations period.

22.   Defendant affirmatively and intentionally lulled, induced, and otherwise prevented Plaintiffs from discovering the existence of their various causes of action against Defendant through its fraudulent acts, omissions, concealments, and suppression of the dangers associated with its drug and other information necessary to put Plaintiffs on notice.  Plaintiffs have therefore been kept in ignorance of vital information essential to the pursuit of their claims, without any fault or lack of diligence on their part.  Plaintiffs could not reasonably have discovered the fraudulent nature of Defendant's conduct.  Accordingly, Defendant is estopped from relying on any statute of limitations to defeat any of Plaintiffs' claims.

## VI.   CAUSES OF ACTION

### A.  STRICT PRODUCTS LIABILITY

23.   Defendant is liable as the manufacturer, distributor and/or seller of Zyprexa because Zyprexa, when sold, was in a defective and unreasonably dangerous condition.  Defendant owed a strict duty to Plaintiffs not to harm Plaintiffs through the use of its drug.

#### 1.   DESIGN DEFECT

24.   Zyprexa was defective in design and/or formulation in that, when it left the hands of Defendant and/or its representatives, the foreseeable risks of serious harm posed by the drug outweighed its alleged benefits.  The foreseeable risks of serious harm were so great that Plaintiffs, and the general public, having known of such foreseeable risks and alleged benefits, would not have ingested Zyprexa.

25.    Zyprexa was placed into the stream of commerce by Defendant, acting through authorized agents, servants, employees and/or representatives.    Plaintiffs were prescribed Zyprexa by Plaintiffs' physicians and used the drugs in a manner reasonably foreseeable by Defendant.

26.    The Zyprexa ingested by Plaintiffs was expected to and did reach Plaintiffs without substantial change in its condition as tested, manufactured, designed, labeled, packaged, marketed and distributed.    As a result of their use of Zyprexa, Plaintiffs suffered severe, permanent and disabling injuries and related damages.

### 2.    MARKETING DEFECT-INADEQUATE AND IMPROPER WARNINGS

27.    Zyprexa was marketed to physicians to be prescribed to their patients and was marketed and advertised directly to the consuming public.    Zyprexa, as manufactured and supplied to healthcare professionals and the general public, was unaccompanied by proper warnings regarding the serious risks of ingesting the drug.    The information provided to consumers did not reflect Defendant's knowledge that Zyprexa was not safe and effective as indicated in its aggressive marketing campaign, nor were consumers made aware that ingesting the drug could result in serious injury, pain and discomfort and/or death.    Additionally, Defendant committed overt acts and issued doublespeak in order to downplay the truth which began to surface.    This information began to emerge in the form of adverse event reports, medical studies, and the 2003 FDA labeling change.    Any attempts by Defendant to satisfy its duty to warn were compromised by the backdrop of Defendant's actions.    Full and proper warnings that accurately and fully reflected the risks of serious injury and/or sudden death due to the ingestion of Zyprexa should have been disclosed by Defendant.

28.   Plaintiffs were prescribed Zyprexa by physicians who utilized the drug in a manner reasonably foreseeable by Defendant.  Zyprexa was expected to and did reach Plaintiffs without substantial change in its condition as tested, manufactured, designed, labeled, packaged, marketed and distributed.   Plaintiffs were not aware of, and could not have reasonably discovered, the unreasonably dangerous nature of Zyprexa.

29.   As the producing cause and legal and direct result of the failure to warn consumers of the defective condition of Zyprexa, as manufactured and/or supplied by Defendant and its representatives, Plaintiffs have suffered severe, permanent and disabling injuries and related damages.

### B. NEGLIGENCE

30.   Defendant owed Plaintiffs legal duties in connection with putting Zyprexa into the marketplace to be ingested by potential patients such as Plaintiffs. Defendant breached its duties, proximately causing Plaintiffs' injuries.  Specifically, Defendant failed to meet its duties to use reasonable care in the testing, creating, designing, manufacturing, labeling, packaging, marketing, selling, and warning of Zyprexa.  Defendant is liable for acts and/or omissions amounting to negligence, gross negligence and/or malice including, but not limited to the following:

   a.  Failure to adequately warn Plaintiffs and Plaintiffs' physicians of the respective known or reasonably foreseeable danger that Plaintiffs would suffer a serious injury or death by ingesting Zyprexa;

   b.  Failure to adequately warn Plaintiffs and Plaintiffs' physicians of the known or reasonably foreseeable danger that Plaintiffs would suffer a serious injury or death by ingesting Zyprexa in unsafe doses;

   c.  Failure to use reasonable care in testing and inspecting Zyprexa, so as to ascertain whether or not it was safe for the purpose for which it was designed, manufactured and sold;

   d.  Failure to use reasonable care in implementing and/or utilizing a reasonably safe design in the manufacture of Zyprexa;

e.  Failure to use reasonable care in the process of manufacturing Zyprexa in a reasonably safe condition for the use for which it was intended;

f.  Failure to use reasonable care in the manner and method of warning Plaintiffs and Plaintiffs' physicians as to the danger and risks of using Zyprexa in unsafe doses;

g.  Failing to use reasonable care in maintaining its continuing duty to warn Plaintiffs and Plaintiffs' physicians of after acquired knowledge;

h.  Failure to use reasonable care under the circumstances in acquiring information about patient experience with actual usage of Zyprexa, observed effects of Zyprexa, monitoring and analyzing information on the quality, safety, efficacy, and all other aspects of reasonable vigilance and ongoing monitoring of a dangerous pharmaceutical (e.g. negligent pharmacovigilance); and

i.  Such further acts and/or omissions that may be proven at trial.

31.  The above-described acts and/or omissions of Defendant were direct and proximate causes of Plaintiffs' injuries, diseases, and damages complained of herein.

## C. INTENTIONAL MISREPRESENTATION

32.  Defendant made material representations that were false and that were either known to be false when made or were asserted recklessly without knowledge of their truth. These misrepresentations involved material facts concerning the character and quality of the drug in question, and reasonably implied to consumers that Zyprexa was safe and would not cause injury. Defendant failed to disclose material facts regarding the dangerous propensities of Zyprexa that were known to Defendants and within the knowledge of Defendant. Defendant was well aware of the lack of knowledge on behalf of consumers such as Plaintiffs, and of the incredible disparity between Defendant's and Plaintiffs' opportunity to fully appreciate and discover the dangerous character of Zyprexa. By failing to disclose the knowledge known and appreciated by Defendant, Defendant intended to induce Plaintiffs and their physicians into continuing to prescribe, purchase and use Zyprexa without worry. Without such knowledge and

the benefit and right of informed choice regarding the dangers known to Defendant, Plaintiffs' suffered the injuries, diseases, and damages complained of herein.

33.     Defendant had in its possession adverse drug event reports, drug studies, and other documentation about Zyprexa, and yet made the following misrepresentations:

      a.  Misrepresentations regarding the respective frequency of Zyprexa-related adverse event reports or occurrences in the drug's label, package insert or PDR label;

      b.  Misrepresentations as to the respective existence, occurrence and frequency of occurrences, severity and extent of the overall risks of Zyprexa;

      c.  Misrepresentations as to the respective efficacy of Zyprexa for both FDA approved and non-approved indications;

      d.  Misrepresentations as to the respective number of adverse events and deaths reported with the use of Zyprexa;

      e.  Misrepresentations regarding the respective nature, seriousness, and severity of adverse events reported with the use of Zyprexa.

34.     Defendant intended that these misrepresentations be relied upon by physicians, including Plaintiffs' physicians, healthcare providers and consumers.  Plaintiffs did rely upon the misrepresentations that caused Plaintiffs' injuries.

35.     As a proximate cause and legal and direct result of Defendant's misrepresentations, Plaintiffs' suffered the injuries, diseases, and damages complained of herein.

### D. NEGLIGENT MISREPRESENTATION

36.     Defendant failed to communicate to Plaintiffs and the general public that the ingestion of Zyprexa could cause serious injuries after they became aware of such risks.  Instead, Defendant represented in its marketing that Zyprexa was safe and effective.

37.     Plaintiffs brings this cause of action against Defendant under the theory of negligent misrepresentation for the following reasons:

a. Defendant, individually, and through its agents, representatives, distributors and/or employees, negligently misrepresented material facts about Zyprexa, in that they made such misrepresentations when they knew or reasonably should have known of the falsity of such misrepresentations. Alternatively, Defendant made such misrepresentations without exercising reasonable care to ascertain the accuracy of these representations;

b. These misrepresentations were made in the course of Defendant's sales of Zyprexa to the general public, Plaintiffs and Plaintiff's physicians for the purpose of inducing continued sales and use of Zyprexa;

c. Defendant knew that the risk of severe physical harm existed as a result of its misrepresentations;

d. Plaintiffs and Plaintiffs' healthcare providers justifiably relied on Defendant's misrepresentations; and

e. Consequently, Plaintiffs ingested Zyprexa to Plaintiffs' detriment.

38.   Defendant's negligent misrepresentations were direct and proximate causes of Plaintiffs' injuries, diseases, and damages complained of herein.

### E.  EXPRESS WARRANTY

39.   Defendant is a merchant and/or seller of Zyprexa.  Defendant sold Zyprexa to consumers, including Plaintiffs, for the ordinary purpose for which such drugs are used by consumers.  Defendant made representations to Plaintiffs about the quality or characteristics of Zyprexa by affirmation of fact, promise and/or description.

40.   The representations by Defendant became part of the basis of the bargain between Defendant and Plaintiffs.  Zyprexa did not comport with the representations made by Defendant in that it was not safe for the use for which it was marketed.  Plaintiffs have notified Defendant that Defendant has breached its express warranties.  This breach of warranty by Defendant was a proximate cause of the injuries and monetary loss suffered by Plaintiffs.

## F. IMPLIED WARRANTY

### 1. WARRANTY OF MERCHANTABILITY

41.   Defendant is a merchant and/or seller of Zyprexa.  Plaintiffs purchased Zyprexa from Defendant and used it for the ordinary purpose for which such drugs are used by consumers.  At the time it was purchased by Plaintiffs, Zyprexa was not fit for the ordinary purpose for which such drugs are used because it was not manufactured, designed or marketed in a manner to accomplish its purpose safely.  Defendant's breach of its implied warranty of merchantability was a direct and proximate cause of Plaintiffs' injuries, diseases, and damages complained of herein.

### 2. WARRANTY OF FITNESS

42.   Defendant sold Zyprexa to Plaintiffs with the knowledge that Plaintiffs were purchasing said drugs for a particular purpose.  Further, Defendant knew, or should have known, that Plaintiffs were relying on Defendant's skill or judgment to select goods fit for Plaintiffs' purpose.

43.   Defendant delivered goods that were unfit for Plaintiffs' particular purpose, and thus breached its implied warranties of fitness.  Plaintiffs have notified Defendant of its breach of implied warranties of fitness.

44.   Defendant's failure to select and sell a product which was reasonably safe for its intended use was a direct and proximate cause of Plaintiffs' injuries, diseases, and damages complained of herein.

## G. UNLAWFUL MARKETING ACTIVITIES / DECEPTIVE TRADE PRACTICES

45.   Plaintiffs are consumers who purchased Zyprexa for the purposes of treating their medical symptoms and conditions.

46.  Defendant, as the seller and supplier of the Zyprexa taken by Plaintiffs, has knowingly and intentionally engaged in false, misleading, and deceptive acts in regards to product safety issues its aggressive marketing and sale of Zyprexa in the United States. Plaintiffs and their physicians have relied upon Defendant's false, misleading, and deceptive acts in this regard in making the decision to take and prescribe Zyprexa.

47.  Defendant's conduct in this regard included:

a.  Representing that Zyprexa had certain characteristics, including being a safer antipsychotic medication without dangers of causing diabetes, diabetes-related injuries (e.g. severe weight gain, hyperglycemia, diabetic ketoacidosis), pancreatitis, cardiovascular complications, and other severe adverse effects, when in fact, Zyprexa did cause those conditions;

b.  Representing that Zyprexa was a more effective antipsychotic, when in fact, new studies have shown that it is not;

c.  Failing to disclose the information known to Defendant regarding the risks associated with Zyprexa with the intention of inducing Plaintiffs into using Zyprexa. Plaintiffs would not have otherwise used Zyprexa if they had been made aware of the full knowledge known to Defendant regarding those extreme risks.

48.  Defendant further breached express and implied warranties to Plaintiffs, which constituted producing causes of Plaintiffs' damages.

49.  Defendant engaged in aggressive, direct-to-consumer advertising and marketing in which these misrepresentations were communicated directly to its consumers, including Plaintiffs.

50.  Plaintiffs relied upon Defendant's false, misleading, and deceptive acts to their detriment.

51.  Defendant's false, misleading, and deceptive acts described above were a direct producing and proximate cause of Plaintiffs' injuries, diseases, and damages complained of herein.

52.    Plaintiffs have provided adequate written notice to Defendant under the Deceptive Trade Practices Act and hereby request that Defendant be held liable for damages recoverable under the Deceptive Trade Practices Act, including treble damages, costs, and attorney's fees.

## H. CIVIL CONSPIRACY

53.    Defendant knowingly agreed, contrived, combined, confederated and conspired with captured research groups, physicians, and trade groups to cause Plaintiffs' injuries, diseases, and damages by continuous downplaying of the risks associated with Zyprexa in the name of more sales. They further conspired to deprive consumers such as Plaintiffs of the opportunity of informed free choice as to whether to use Zyprexa or to expose themselves to its hidden dangers. Defendant committed the above described wrongs by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of Zyprexa.

54.    In furtherance of said conspiracies, Defendant and its co-conspirators performed the following overt acts:

      a.  For years, Defendant and its co-conspirators, have been in possession of medical and scientific data, literature and test reports which clearly indicated that Zyprexa and other antipsychotic drugs could cause diabetes, diabetes-related injuries (e.g. severe weight gain, hyperglycemia, diabetic ketoacidosis), pancreatitis, cardiovascular complications, and other severe adverse effects;

      b.  Despite the medical and scientific data, literature, and test reports possessed by and available to Defendant, Defendant and its co-conspirators fraudulently, willfully, and maliciously:

            i.  Withheld, concealed, and suppressed said medical and scientific data, literature and test reports regarding the risks of diabetes, diabetes-related injuries (e.g. severe weight gain, hyperglycemia, diabetic ketoacidosis), pancreatitis, cardiovascular complications, and other severe adverse effects from the general public, Plaintiffs and Plaintiffs' physicians; and

ii.  Caused to be released, published and disseminated medical and scientific data, literature, test reports, and marketing and promotional materials containing information and statements regarding the risks of diabetes, diabetes-related injuries (e.g. severe weight gain, hyperglycemia, diabetic ketoacidosis), pancreatitis, cardiovascular complications, and other severe adverse effects, which Defendants knew were incorrect, incomplete, outdated and misleading.

55.  By the false and fraudulent representations, omissions and concealments set forth above, Defendant and its co-conspirators intended to induce Plaintiffs and Plaintiffs' physicians to rely upon said false and fraudulent representations, omissions and concealments, to continue to expose themselves to the dangers inherent in the use of Zyprexa.

56.  Defendant's participation in this conspiracy was a direct and proximate cause of Plaintiffs' injuries, diseases, and damages complained of herein.

## VII.  DAMAGES

57.  Upon trial of this case, Plaintiffs respectfully request the Court and Jury to determine the amount of loss Plaintiffs have incurred in the past and will incur in the future, not only from a financial standpoint, but also in terms of good health and freedom from pain and worry.  There are certain elements of damages provided by law that Plaintiffs are entitled to have the Jury separately consider to reasonably compensate Plaintiffs for the injuries, damages and losses incurred, as well as those to be incurred in the future.  Plaintiffs have been damaged as a result of Defendants' acts and omissions complained of herein in the following particulars:

a.  Plaintiffs have incurred medical, pharmaceutical, hospital, and related expenses and may be reasonably expected to incur additional expenses in the future due to the progressive nature of their injuries;

b.  The likely progression and related life-threatening medical conditions reasonably anticipated to accompany Plaintiffs' injuries will require lifetime medical monitoring as well as domestic help and nursing care as their conditions deteriorates;

    c.  Plaintiffs are subject to an extraordinarily increased likelihood of developing heart disease, strokes, high blood pressure, blindness, kidney disease, nervous system disease, amputations, dental disease, pregnancy complications, sexual dysfunction, and other diabetes related complications;

    d.  Plaintiffs have endured pain and suffering, mental and emotional anguish and anxiety, and loss of the enjoyment of a normal life as a result of their injuries, and they will continue to endure the same in the future;

    e.  Plaintiffs have had their future wage earning capacity impaired as a result of their injuries;

    f.  Plaintiffs will likely suffer from a degree of permanent physical impairment, disability, and disfigurement as a result of their injuries as they progress in the future;

    g.  Plaintiffs have been and will otherwise be prevented from participating in and enjoying the benefits of a full and complete life;

    h.  Plaintiffs' spouses, where named, also seeks damages for loss of consortium; and,

    i.  Plaintiffs assert a claim for prejudgment interest on all elements of damages as allowed by law.

## VIII.   WRONGFUL DEATH & SURVIVAL DAMAGES

58.  In the case where Plaintiffs have suffered a wrongful death due to Defendants' acts and omissions complained of herein, Plaintiffs' heirs and representatives seek compensation for the following general and special damages including, but not limited to, damages for survival and wrongful death claims that Plaintiffs have sustained both in their individual capacity and as personal representatives of the estate:

    a.  The conscious physical pain and suffering sustained by Decedent prior to their death;

    b.  The mental anguish sustained by Decedent prior to their death;

    c.  The physical impairment suffered by Decedent prior to their death;

    d.  The disfigurement suffered by Decedent prior to their death;

e.  Reasonable and necessary medical expenses incurred by Decedent prior to their death;

f.  Reasonable funeral and burial expenses incurred by Decedent and their estate;

g.  Decedent's lost earning capacity;

h.  The loss of household services, consortium, pecuniary loss, companionship and society which Plaintiffs received from Decedent prior to their last illnesses and death;

i.  The mental anguish suffered by Plaintiffs as a consequence of the last illnesses and death of Decedent; and,

j.  Prejudgment interest on all elements of damages as allowed by law.

## VIII.   PUNITIVE DAMAGES

59.   At all times relevant hereto, Defendant had actual knowledge of the defective nature of Zyprexa as set forth herein and continued to design, manufacture, market, distribute and sell it so as to maximize sales and profits at the expense of the public's health and safety and in conscious disregard of the foreseeable serious harm caused by the drug.  Defendant's conduct exhibits such an entire want of care as to establish that its actions were a result of fraud, ill will, recklessness, gross negligence, malice and/or willful and intentional disregard for the safety and rights of consumers of its drugs such as Plaintiffs.  Plaintiffs are therefore entitled to punitive damages.

## IX.   JURY DEMAND

60.   Plaintiffs hereby request a trial by jury on all issues in this case.

## X.   PRAYER

61.   WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that upon final hearing, Plaintiffs have and recover judgment from Defendant, pursuant to the above and foregoing allegations in such amounts as found proper by a jury, which is in excess of the jurisdictional

minimum of this court and as the evidence may show proper at the time of trial, together with interest thereon at the legal rate; punitive an/or exemplary damages; Plaintiffs' costs and attorneys' fees expended in prosecuting this matter; and for such other and further relief, both general and special, at law and in equity, to which Plaintiffs may be justly entitled.

Respectfully submitted,

By: _____

F. Kenneth Bailey, Jr., Lead Attorney
Texas State Bar No. 01543500
kbailey@bpblaw.com
Michael W. Perrin
Texas State Bar No. 15797500
mperrin@bpblaw.com
K. Camp Bailey
Texas State Bar No. 24006782
cbailey@bpblaw.com
**BAILEY PERRIN BAILEY LLP**
440 Louisiana St., Suite 2100
Houston, Texas 77002
(713) 425-7100 Telephone
(713) 425-7101 Facsimile

Kurt Truelove
Texas State Bar No. 24013653
ktruelove@texarkanalaw.com
**PATTON TIDWELL & SCHROEDER LLP**
4605 Texas Blvd.
P.O. Box 5398
Texarkana, TX 75503
(903) 792-7080 Telephone
(903) 792-8233 Facsimile

**ATTORNEYS FOR PLAINTIFFS**